IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CORPORATION OF GUARDIANSHIP,      )
INC., TRUSTEE OF THE HILLARY      )
WINFREE IRREVOCABLE (D)(4)(A)     )
SPECIAL NEEDS TRUST,              )
STEPHEN SINCLAIR WINFREE,         )
individually, and as             )
Administrator of the Estate of   )
HILLARY NICOLE WINFREE, and       )
MARION F. WINFREE, individually, )
                                  )
            Plaintiffs,           )
                                  )
      v.                          )        1:15CV245
                                  )
RICHARD O. BRAJER, in his         )
official capacity as Secretary    )
of the North Carolina            )
Department of Health and Human    )
Services, and DAVE RICHARD,       )
in his official capacity as       )
Deputy Secretary of Medical       )
Assistance of the North           )
Carolina Department of Health     )
and Human Services,               )
                                  )
            Defendants.           )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiffs Corporation of Guardianship, Inc., Stephen

Sinclair Winfree, and Marion F. Winfree (collectively

"Plaintiffs") filed the present action against Defendants

Richard O. Brajer and Dave Richard ("Defendants") on March 19,

2015.[1] (Complaint ("Compl.") (Doc. 1).) On May 11, 2015, Defendants filed a motion to dismiss and supporting brief (Docs. 12, 13). Plaintiffs filed their response (Doc. 15) on June 22, 2015, and Defendants filed a reply (Doc. 20) on July 9, 2015. In response to Defendants' reply, on July 23, 2015, Plaintiffs filed a motion for leave to file a surreply and request for hearing or oral argument (Doc. 21). On September 4, 2015, this court granted in part Plaintiffs' motion, with respect to a hearing, and denied in part Plaintiffs' motion, with respect to a surreply. (Doc. 24 at 4.) On February 24, 2016, this court held a hearing and permitted the parties to file supplemental briefs from the hearing and responses to those supplemental briefs. Plaintiffs filed their supplemental brief on February 29, 2016 (Doc. 27), and Defendants filed their supplemental brief on the same day (Doc. 28). On March 7, 2016, Plaintiffs filed their reply to Defendants' supplemental brief (Doc. 29), and Defendants filed their response to Plaintiffs'

---

[1] Robin G. Cummings was the Director of the Division of Medical Assistance; however, that office has been superseded by the office of Deputy Secretary for Medical Assistance, a position held by Dave Richard, who was therefore substituted for Cummings pursuant to Federal Rule of Civil Procedure 25(d). (Doc. 18 at 1-2.) Richard O. Brajer succeeded Aldona Z. Wos as Secretary of the North Carolina Department of Health and Human Services and was substituted for her pursuant to the provisions of Federal Rule 25(d) on September 18, 2015. (Doc. 25 at 1-2.)

- 2 -

supplemental brief (Doc. 30). The motion to dismiss is now ripe for adjudication and for the reasons that follow, this court will grant in part and deny in part Defendants' motion.

## I.   **FACTS**

Plaintiffs Stephen Sinclair Winfree and Marion F. Winfree were the parents of Hillary Winfree. (Compl. (Doc. 1) ¶ 8.) Hillary Winfree was an identified class member in Category Three Neurological Injury Claims in the E-Ferol litigation. (Id. ¶ 14.) While in 2010 the court presiding over the E-Ferol litigation approved a settlement of the class action, that court took subsequent steps to address the potential for state and third-party claims to the funds prior to distributing them to the plaintiffs. (See id. ¶¶ 15, 18-30.)

As alleged by Plaintiffs, during the course of the E-Ferol class litigation, the court had the parties and their counsel develop a protocol to consider any claims for reimbursement for E-Ferol-related medical expenses, as formally established by the court's March 30, 2011 order. (Id. ¶ 18; Ex. 6 (Doc. 1-6).) Plaintiffs further allege that the court then contacted all potential lien claimants, informed them of the appropriate time to advise the court of medical expenses for which they would be entitled to reimbursement from the settlement proceeds, and further notified the claimants that it would have a hearing to

- 3 -

create a process to consider all claims regarding medical expenses related to federal and state statutes and regulations governing Medicare and Medicaid third-party liability claims recovery. (Compl. (Doc. 1) ¶ 19.) Plaintiffs allege that the State of North Carolina was one of these potential lien claimants. (Id. ¶¶ 19-20.) In that court order, Plaintiffs allege, the court noted that no state agency had filed any claim as to medical expenses that may have been considered or had appeared for the June 21, 2011 hearing. (Id. ¶¶ 21-22.) Plaintiffs allege that the court "ordered that no E-Ferol class member has any reimbursement obligation ' . . . under the Third-Party Reimbursement and Recovery Provisions of the Medicaid statutes of the fifty states, or . . . any other . . . state statute, regulations, and various state laws governing Medicaid Third-Party liability claims recovery.'" (Id. ¶ 22.)

In approving the class settlement, the court further ordered that it would approve any required special needs trusts ("SNTs") into which the settlement proceeds and annuity payments would be sheltered for parties who were disabled and incompetent, in order to allow them to maintain their Medicaid eligibility. (Id. ¶ 23.) Plaintiffs further allege that in anticipation of Hillary Winfree's settlement, Plaintiffs' counsel sought a motion to approve the settlement and included

- 4 -

information to show the proposed SNT, the releases necessary, the trustee affidavit, and the proposed financial structure for funding the SNT, (id. ¶ 25), and sent the proposed SNT itself to Social Security and the North Carolina Department of Health and Human Services ("NC DHHS") for review. (Id. ¶ 26.) After an iterative process to iron out the details of the SNT, (id. ¶ 27), the court approved the SNT and the distribution of the funds into the SNT and reentered its prior order. (Id. ¶¶ 28 (detailing that "the Court re-entered its order (doc. No. 523), dated June 21, 2011, specifically applying for the applicable party, HILLARY, the denial of reimbursement to the State of North Carolina" (citations omitted)), 29-30.)

After the beneficiary, Hillary Winfree, died on May 11, 2014, counsel for Plaintiffs gave notice of her death and requested the specific Medicaid amount to reimburse the State for the services she received from the date of the trust's establishment (January 31, 2012, thus resulting in a start date of February 2012 for services) to her death. (Id. ¶¶ 30-32.) A paralegal for Defendants replied on June 4, 2014, with a letter indicating that Plaintiffs were required to pay back $695,910.83 — the amount of Medicaid services expended on Hillary from 2002 to her death. (Id. ¶ 33; see also Ex. 23 (Doc. 1-23).) Plaintiffs disagreed and responded on June 23, 2014, by

including orders from Judge Sidney A. Fitzwater to support their argument that the amount owed was $77,587.91 — the amount of expenses she accumulated from 2012 to 2014. (Compl. (Doc. 1) ¶ 34; see also Ex. 24 (Doc. 1-24).) Plaintiffs subsequently, on August 4, 2014, sent Defendants a letter and accompanying check for $77,587.91, specifically declaring it to be the full and complete settlement of a disputed claim. (Compl. (Doc. 1) ¶ 35; see also Ex. 25 (Doc. 1-25).) This correspondence also included an Acknowledgement of Receipt of Funds that Plaintiffs requested that Defendants sign and return. (Compl. (Doc. 1) ¶ 35.) In the memo section, the check itself contains the phrase "Full Payment in Satisfaction of Disputed Claim." (Id., Ex. 27 (Doc. 1-27).) Additionally, the letter stated "The Corporation of Guardianship, Trustee of the Hillary Nicole Winfree Irrevocable Special Needs (d)(4)(A) Trust, has issued from the corpus of the Winfree SNT the enclosed check to DMA in the amount of $77,587.91 in full and complete settlement of a disputed claim." (Id., Ex. 25 (Doc. 1-25) at 1.) A lawyer for Defendants responded via email on August 7, 2014, declaring that the settlement presented by the check would be rejected and that they contended that the payback requirement encompassed $695,910.83 – the beneficiary's lifetime Medicaid expenses. (Compl. (Doc. 1) ¶ 36.) Four days later, on August 11, 2014, the

- 6 -

proffered $77,587.91 check was negotiated and deposited into the North Carolina State Treasury, DHHS Division of Medical Assistance bank account. (Id. ¶ 37; see also Ex. 27 (Doc. 1-27) (negotiated check).)

Plaintiffs filed suit on March 19, 2015, seeking a declaration and judgment that they have fully satisfied the Medicaid payback requirement by their check and that Defendants are to accept that amount as full and complete satisfaction, (Compl. (Doc. 1) ¶ 50), that Defendant Wos (now Brajer) acknowledge the satisfaction of the outstanding balance in writing, (id. at 16)[2], that the court declare that Defendants violated Plaintiffs' rights under 42 U.S.C. § 1988 and the Fourteenth Amendment's Equal Protection and Due Process clauses, (id. at 15), that the court enter judgment against Defendants in their official capacities for violating Plaintiffs' civil rights, (id. at 16), and that the court tax Plaintiffs' costs and attorneys' fees against Defendants. (Id. ¶ 58.)

---

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

## II.  __SUBJECT-MATTER JURISDICTION__

As an initial matter, Defendants move to dismiss Plaintiffs' claims for lack of subject-matter jurisdiction, as Plaintiffs' initially pled diversity-of-citizenship subject-matter jurisdiction under 28 U.S.C. § 1332, (Compl. (Doc. 1) ¶ 12), but no diversity exists whatsoever, as all Plaintiffs and Defendants are deemed citizens of North Carolina. (Id. ¶¶ 7-11; Defs.' Mot. to Dismiss (Doc. 12) at 1-2; Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") (Doc. 13) at 18.)

Courts "should dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the complaint fails to allege facts upon which subject matter jurisdiction can be based or if jurisdictional allegations in the complaint are not true." McLaughlin v. Safway Servs., LLC, 429 F. App'x 347, 348 (4th Cir. 2011); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982) (outlining two ways lack of subject-matter jurisdiction arises: failure "to allege facts upon which subject matter jurisdiction can be based" and when "the jurisdictional allegations of the complaint were not true"). A challenged plaintiff "bears the burden of persuasion" in defending subject-matter jurisdiction. Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). In all cases, jurisdiction must be "established as a threshold matter," Steel Co. v. Citizens for a Better

- 8 -

_Environment_, 523 U.S. 83, 94 (1998) (citations omitted), and as a "question the court is bound to ask and answer for itself." _Mansfield, C. & L.M. Ry. Co. v. Swan_, 111 U.S. 379, 382 (1884).

At the February 24, 2016 hearing, this court inquired into subject-matter jurisdiction and Plaintiffs clarified that they intended to invoke 28 U.S.C. § 1331 federal-question jurisdiction instead of § 1332 diversity-of-citizenship jurisdiction. (_See also_ Pls.' Suppl. Br. to Defs.' Mot. to Dismiss (Doc. 27) at 1 n.1 ("As noted during the hearing, Plaintiffs rely on 28 U.S.C. Section 1331 for subject matter jurisdiction. Plaintiffs' claims arise under federal law, specifically the payback provision of 42 U.S.C. § 1396p(d), and the Constitution.").) This court is satisfied that, upon an application of the well-pleaded-complaint rule, a federal question would exist to satisfy 28 U.S.C. § 1331 jurisdiction. Thus, because "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed," _Newman-Green, Inc. v. Alfonzo-Larrain_, 490 U.S. 826, 830 (1989) (citation omitted), Plaintiffs have leave to amend their complaint to reflect the proper jurisdictional basis. _See Schlesinger v. Councilman_, 420 U.S. 738, 744 & n.9 (1975); _Saxon Fibers, LLC. v. Wood_, 118 F. App'x 750, 752 (4th Cir. 2005); _State v. Ivory_, 906 F.2d 999, 1001 n.4 (4th Cir. 1990). As

- 9 -

sufficient federal questions have been pled, this court has
jurisdiction to resolve the other issues presented in
Defendants' motion to dismiss.

## III. <u>LEGAL STANDARD – FAILURE TO STATE A CLAIM</u>

Defendants also move to dismiss Plaintiffs' claims pursuant
to Rule 12(b)(6). To survive a motion to dismiss, Plaintiffs
must allege "sufficient factual matter, accepted as true, to
'state a claim to relief that is plausible on its face.'"
<u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl.
Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). To be facially
plausible, a claim must "plead[] factual content that allows the
court to draw the reasonable inference that the defendant is
liable" and must demonstrate "more than a sheer possibility that
a defendant has acted unlawfully." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S.
at 556). A court must accept the complaint's factual allegations
as true when ruling on a Rule 12(b)(6) motion. <u>Id.</u> Further, "the
complaint, including all reasonable inferences therefrom, [is]
liberally construed in the plaintiff's favor." <u>Estate of
Williams-Moore v. All. One Receivables Mgmt., Inc.</u>, 335 F. Supp.
2d 636, 646 (M.D.N.C. 2004) (citing <u>McNair v. Lend Lease Trucks,
Inc.</u>, 95 F.3d 325, 327 (4th Cir. 1996)). However, this "does not
mean that the court can ignore a clear failure in the pleadings
to allege any facts [that] set forth a claim." <u>Id.</u> at 646. A

court does not accept mere legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## IV. **PLAINTIFFS' CONSTITUTIONAL CLAIMS**

Plaintiffs raise their constitutional claims in Count II of the Complaint, arguing that Defendants' actions allegedly circumvent the decisions of Judge Fitzwater in the underlying class action and SNT-establishment process and constitute violations of the Due Process Clause. (Compl. (Doc. 1) ¶ 53.) Plaintiffs also assert that Defendants' actions in seeking payment for the entirety of the beneficiary's lifetime violate Plaintiffs' rights under 42 U.S.C. 1988 and the Equal Protection and Due Process Clauses because they seek settlement funds post-settlement and post-federal court orders that allegedly excluded Medicaid expenditures incurred prior to the creation of SNT. (Id. at 14-15.)

Plaintiffs group their procedural objections to Defendants' claim to the full Medicaid expenses incurred on the beneficiary's behalf as objecting to behavior in contradiction to § 1988 and the Fourteenth Amendment. (Pls.' Resp. to Defs.' Mot. to Dismiss ("Pls.' Resp.") (Doc. 15) at 11-18.) Plaintiffs argue that adequate process already existed in the form of the

- 11 -

class action court's claim resolution process for claims against class members' settlement proceeds and, because Defendants failed to avail themselves of this process, their action against the funds in the SNT involves an effort to not comply with the prior court's process. (Id. at 12-13.) They specifically argue that Judge Fitzwater set up the process for claims, determined that after failing to use the process the State was not entitled to make any more claims, and thus any argument that the SNT provided for a state right of action against the funds would involve the judge nullifying the process he created. (Id. at 13.) They similarly classify Defendants' distinction between third-party claims against the settlement proceeds and state claims against the later-created SNT as an attempt to subvert the prior court's process. (Id. at 14.) Further, in combining their Equal Protection and Due Process analysis, Plaintiffs argue that the class at issue here involves disabled persons who received Medicaid and created SNTs and that this class is penalized to an arbitrary and capricious extent that fails to withstand rational basis scrutiny. (Id. at 15-16.) They support this argument with assertions that Defendants' urged interpretation of the payback requirement would create unequal abilities to transfer assets between those with and without SNTs as well as that the argument would let states profit from

- 12 -

wrongdoing and/or gain a potential financial windfall. (Id. at
17-18.) Finally, as to arbitrariness, Plaintiffs assert that
because Defendants' position would force potential SNT
beneficiaries and their families to gamble on whether creating a
SNT would be worthwhile based on the disabled person's prognosis
and needs, an unreasonable question arises. (Id. at 18.)

As to specific procedural concerns, Defendants assert that
the prior court orders address third-party claims against class
members' settlement proceeds, not any subsequent SNTs created on
their behalves, and corresponding laws and precedent support
their ability to seek payment from a SNT regardless of the
status of third-party claims against the beneficiary's original
settlement. (Defs.' Mem. (Doc. 13) at 10-15.) Specifically
addressing the Due Process Clause contention, Defendants assert
that because they do not seek the funds under the procedure for
the prior court invoking N.C. Gen. Stat. §§ 108A-57 and 108A-59,
the very foundation of Plaintiffs' critique is unfounded. (Id.
at 16.) Further, Defendants also argue that if a Due Process
inquiry occurs, Plaintiffs, as the beneficiary's heirs only, do
not have a legal entitlement to the funds in the SNT because
their interest in the proceeds is subject to the satisfaction of
state claims, and further, because Defendants have only made a
claim at this point, any further action to collect would likely

- 13 -

occur in state court, thus providing Plaintiffs with sufficient process to foreclose a procedural Due Process claim. (Id. at 17-18.)  As to the extent of any Equal Protection claim made by Plaintiffs, Defendants argue that the claim has no factual support, specifically that since Plaintiffs are not members of a protected class, the rational basis test applies and no facts have been pled to establish that any varying treatment is irrational. (Id. at 15.) They also argue that because Medicaid is only available for disabled persons, it cannot simultaneously violate Equal Protection or Due Process rights for disabled persons. (Defs.' Reply (Doc. 20) at 9.)

In relevant part, the Fourteenth Amendment to the United States Constitution states: "No State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

"[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others" and "[t]he constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective." McGowan v. State of Md., 366 U.S. 420, 425 (1961). Further, when it comes to the rights of disabled persons under

- 14 -

the Equal Protection Clause, the Supreme Court has determined
"that States are not required by the Fourteenth Amendment to
make special accommodations for the disabled, so long as their
actions toward such individuals are rational." Bd. of Trs. of
Univ. of Ala. v. Garrett, 531 U.S. 356, 367 (2001). Plaintiffs –
to the extent they even allege an Equal Protection Clause claim
– make no allegation that the State has made a classification
here, (Compl. (Doc. 1) ¶¶ 51-54), never mind that it has done so
in a way that violates Constitutional guarantees of equal
protection.[3]

As to the Due Process Clause, Plaintiffs focus their
procedural allegations on the argument that Defendants are
engaging in procedural irregularities by "circumvent[ing] the

---

[3] Plaintiffs argue that, to the extent 42 U.S.C. § 1396p(d)
creates a duty to pay back all benefits, such an interpretation
unfairly taxes a small group of disabled individuals by not
imposing a similar provision on other disabled individuals.  To
the extent that is the crux of the Equal Protection argument,
this court does not find that those allegations plausibly state
a claim.  42 U.S.C. § 1396p(d) allows a benefit – the right of
the beneficiary to accept and use trust proceeds while
continuing to receive medical assistance benefits – that is
virtually unique in the statutory scheme.  Plaintiffs' argument
recognizes the benefit of a special needs trust and the
potential burden of repayment but presents no similarly situated
class of individuals or circumstances that might suggest unequal
protection.  In light of the fact that the prior statutory
scheme would have required a disabled individual to either
accept trust benefits while relinquishing medical assistance
benefits or decline the trust benefits, the rational basis for
the statutory compromise is self-evident.

decision of Judge Fitzwater" and instead "prioritizing their own interpretation of the applicable law" and "creating an additional, untimely, and extra-judicial process which the Court, by creating its own fair procedures, had intended to avoid." (Id. ¶¶ 53-54.) Generally, a Due Process claim first requires that a governmental action have deprived individual(s) of life, liberty, or property. See U.S. Const. amend. XIV, § 1; Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (citations omitted); see also Davis v. Rao, 583 F. App'x 113, 114 (4th Cir. 2014 ("To state a procedural due process claim, [Plaintiff] must allege that: (1) she had a 'constitutionally cognizable life, liberty, or property interest;' (2) Defendants deprived her of that interest; (3) and 'the procedures employed were constitutionally inadequate.'" (citation omitted)). However, although "[w]hen protected interests are implicated, the right to some kind of prior hearing is paramount," "the range of interests protected by procedural due process is not infinite." Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 569-70 (1972). Thus, before ever considering whether process is sufficient, courts must first "look to see if the interest is within the Fourteenth Amendment's protection of liberty and property." Id. at 571. As to property, "the property interests protected by procedural due process extend well beyond actual

- 16 -

ownership of real estate, chattels, or money." Id. at 571-72.

Thus, "[t]he Fourteenth Amendment's procedural protection of

property is a safeguard of the security of interests that a

person has already acquired in specific benefits" and "[t]hese

interests – property interests – may take many forms." Id. at

576; see also Town of Castle Rock, Colo. v. Gonzales, 545 U.S.

748, 789 (2005) ("The 'types of interests protected as

"property" are varied and, as often as not, intangible, relating

"to the whole domain of social and economic fact."'" (citations

omitted)).  Specifically, "[t]o have a property interest in a

benefit, a person clearly must have more than an abstract need

or desire for it. He must have more than a unilateral

expectation of it. He must, instead, have a legitimate claim of

entitlement to it." Bd. of Regents of State Colls., 408 U.S. at

577. These interests "are created and their dimensions are

defined by existing rules or understandings that stem from an

independent source such as state law – rules or understandings

that secure certain benefits and that support claims of

entitlement to those benefits." Id.; see also Perry v.

Sindermann, 408 U.S. 593, 601 (1972) ("Rather, 'property'

denotes a broad range of interests that are secured by 'existing

rules or understandings.'" (citation omitted)).  Examples of

property interests recognized by the Supreme Court include

"welfare benefits, disability benefits, public education, utility services, government employment, as well as . . . other entitlements that defy easy categorization." <u>Gonzales</u>, 545 U.S. at 789-90 (citations omitted).

While Plaintiffs allege that the process followed by the Defendants in attempting to garner greater payout from the SNT at issue here was constitutionally problematic, the basic issue remains that Plaintiffs have not alleged sufficiently their entitlement to the trust proceeds. Even baring a specific allegation that they are entitled to the proceeds of the trust, the trust is first bound to satisfy its payback obligation – whether it be the amount advocated by Plaintiffs or the amount advocated by Defendants – to the State before it can make any further disbursements. Even further, there is no indication that Defendants, in pursuing their claim to the full scope of Medicaid payments from the trust, would circumvent the court process, where a judge would have the opportunity, when and if applicable, to apply Judge Fitzwater's procedural orders. Thus, Plaintiffs have failed to allege that the government has denied them a legal entitlement via insufficient process of law. Consequently, Count II of the Complaint will be dismissed for failure to state a claim upon which relief can be granted.

- 18 -

## V. CLAIMS ARISING OUT OF JUDICIAL INTERPRETATION OF 42 U.S.C. § 1396p

As to the issue of the scope of the payback required from the SNT, Plaintiffs seek a declaration from this court that the State is only entitled to expenses incurred during the period from the creation of the SNT to the beneficiary's death. (Compl. (Doc. 1) ¶¶ 40, 45, 48, 50.) Both parties' briefs on this matter focus on their efforts to have this court render an interpretation of 42 U.S.C. § 1396p(d)(4)(A) and the scope of the Medicaid payback requirement. However, upon inspection of the Complaint, submitted materials, the briefs, and arguments, this court is not satisfied that the issue of the proper interpretation of § 1396p is ripe for ruling; that is, this court is not satisfied that a final determination of the proper interpretation of § 1396p is necessary to the resolution of Plaintiffs' claims.

This court notes that the Complaint alleges facts that, if proved, might result in a finding of an accord and satisfaction. Specifically, Plaintiffs allege that they sent a check in the amount of $77,587.91 (the medical expenses that arose after the creation of the SNT) to Defendants declaring it to be the full and complete settlement of a disputed claim, along with a letter, on August 4, 2014, and requested that it be signed and

- 19 -

returned. (Compl. (Doc. 1) ¶ 35.) They further allege that the North Carolina Assistant Attorney General Brian Rabinovitz sent an email saying that the check as a full settlement would be rejected and that the SNT actually owed all of the lifetime medical expenses of the beneficiary, in the amount of $695,910.83. (Id. ¶ 36.) Plaintiffs allege that the check was negotiated on August 11, 2014, by Defendants depositing it, with notice and knowledge that the check was in full and complete satisfaction and reimbursement, and that the deposit was made in Defendants' official capacities. (Id. ¶ 37.)

On the physical check itself, in the lower left-hand corner memo section, there is a handwritten note stating "Full Payment in Satisfaction of Disputed Claim." (Id., Ex. 27 (Doc. 1-27) at 1.) The accompanying August 4, 2014 letter stated that the trustee "has issued . . . the enclosed check . . . in the amount of $77,587.91 in full and complete settlement of a disputed claim." (Id., Ex. 25 (Doc. 1-25) at 1.) The letter also referenced an enclosed "Receipt of Funds in Full Satisfaction of Lien that is required to be properly executed and returned" so that it could "be filed with the federal court as part of the trustee's report on the SNT's closure." (Id. at 1-2.) There is no evidence or allegation that Defendants ever signed or returned this enclosure. Instead, Rabinovitz sent an email on

August 7, 2014, specifically stating that he had received the letters, he disagreed with the interpretation of the impact of Judge Fitzwater's order on the payback required under § 1396p(d)(4)(A), and emphasized that trust documents stated that Medicaid would be paid back the total amount. (Id., Ex. 26 (Doc. 1-26) at 1.) Further, Rabinovitz went on to declare:

> DMA's cashing of the partial payment that you sent does not constitute an accord and satisfaction or acceptance of the partial payment as payment in full. The amount of Medicaid's trust claim is determined in accordance with 42 U.S.C. § 1396p(d)(4)(A) and other applicable State and federal law and, absent express agreement by DMA to accept a lesser amount, full payment of the total amount due is statutorily required.

(Id.)

While it does not appear that those facts are substantially in dispute, (see Compl., Ex. 27 (Doc. 1-27)), the facts have not yet been established as a matter of record. Because inspection of the Complaint reveals that an accord and satisfaction is

- 21 -

alleged and may be applicable here,[4] the question of statutory interpretation is not ripe for adjudication.

"A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." Miller v. Brown, 462 F.3d 312, 318-19 (4th Cir. 2006) (citation omitted). In fact, "[r]ipeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies . . . .' " Tammy W. v. Hardy, 681 F. Supp. 2d 732, 735-36 (S.D. W. Va. 2010) (citation omitted).

---

[4] In North Carolina, "[w]hen there is some indication on a check that it is tendered in full payment of a disputed claim, the cashing of the check is held to be an accord and satisfaction as a matter of law." Sanyo Elec., Inc. v. Albright Distrib. Co., 76 N.C. App. 115, 117, 331 S.E.2d 738, 740 (1985) (citation omitted). Further, "[i]f the accord is fully performed, the performance satisfies the original claim, and bars a subsequent action to enforce it." Dobias v. White, 239 N.C. 409, 413, 80 S.E.2d 23, 27 (1954).

As to the question of whether a party can accept a check or settlement proffered while still maintaining an objection to the settlement and an action for any remaining funds, the North Carolina Supreme Court has determined that "[o]ne party will not be allowed to accept the benefit of the check so tendered and at the same time retain the right to sue for an additional amount." Moore v. Greene, 237 N.C. 614, 616, 75 S.E.2d 649, 650 (1953); see also Zanone v. RJR Nabisco, Inc., 120 N.C. App. 768, 463 S.E.2d 584 (1995); Barber v. White, 46 N.C. App. 110, 264 S.E.2d 385 (1980).

Ordinarily, for a case to be found insufficiently ripe within the context of agency action, there is further action required from or by the agency before an injury can be deemed to have occurred and the action be ripe. See, e.g., Nat'l Park Hosp. Ass'n v. Dep't of Interior, 538 U.S. 803, 808 (2003). In this case, the context is the opposite – no further action is required by or from an agency – but the ripeness issue remains. That is, if Plaintiffs have alleged facts sufficient to establish an accord and satisfaction such that no further money is due from the SNT, then there is no need for this court to construe the statute. This is particularly true as construing the statute in this context could result in a construction in a manner consistent with Defendants' statutory position (that § 1396p(d)(4)(A)'s payback requirement encompasses expenses over the entirety of the beneficiary's lifetime) but inconsistent with an accord and satisfaction (where the disputed payback amount would be resolved by the cashing of the check reimbursing only those expenses incurred during the duration of the SNT). Furthermore, even if this court were to determine, in that situation, that § 1396p(d)(4)(A) is properly interpreted to include a broad SNT payback requirement, in accordance with Defendants' proffered statutory interpretation, such an interpretation would be rendered moot if this court should later

find that the matter between these parties was nevertheless resolved upon the prior accord and satisfaction of the disputed debt. Consequently, Defendants' motion as to this count will be deferred without prejudice.

## VI. <u>CONCLUSION</u>

Thus, Defendants' motion to dismiss (Doc. 12) will be granted in part as to Count II and deferred until trial, pursuant to Federal Rule of Civil Procedure 12(i), as to Count I and, to the scope it envelopes it, Count III.[5] <u>See</u> Fed. R. Civ. P. 12(i). Upon the filing of Defendants' answer, all parties are to appear before this court for a Rule 26 discovery conference in order to establish an appropriate discovery schedule. This court directs the Clerk to set this matter for a Joint Rule 26(f) discovery conference before this court rather than before the Magistrate Judge.[6]

---

[5] Although the issue is deferred until trial, obviously the matter may be addressed at summary judgment.

[6] This court will hold the discovery conference. The parties are to confer and, to the extent possible, prepare a proposed order as to the matters agreed upon as required by the Local Rules. However, the court will hold a conference before entering a scheduling order to allow the court to determine how much of the record may be stipulated to, how long discovery will take, and an appropriate briefing schedule for summary judgment in light of the briefs filed in relation to the motion to dismiss.

For the reasons set forth herein, **IT IS HEREBY ORDERED** that
Defendants' Motion to Dismiss (Doc. 12) is **GRANTED IN PART**, in
dismissing Count II, and **DEFERRED IN PART, WITHOUT PREJUDICE,** as
to Counts I and III.

**IT IS FURTHER ORDERED** that the Clerk is directed to set a
Joint Rule 26(f) discovery conference in this matter before this
court.

This the 21st day of March, 2016.

_____
United States District Judge